UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER A. SEIFER,<br><br>Defendant. | Case No. 14-CR-19-JPS<br><br>7th Circuit Case No. 14-3097<br><br>ORDER |

The defendant, Christopher A. Seifer ("Seifer"), has filed a motion to stay imposition of his sentence pending the resolution of his appeal, pursuant to 18 U.S.C. § 3143(b); the motion was filed on October 27, 2014. (Docket #53). Seifer's motion requests, in the alternative, that the Court grant a thirty (30) day extension of his self-surrender date from October 31, 2014, to November 30, 2014. *Id.* One day after Seifer's motion was filed—on October 28, 2014—the government filed a letter in opposition to Seifer's motion. (Docket #54). With the benefit of the parties' submissions together with the analysis which follows, the motion will be denied.

1. BACKGROUND

On February 4, 2014, Seifer was charged in a five-count Indictment alleging four counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of theft of government property, in violation of 18 U.S.C. § 641. (Docket #1). Seifer pled not guilty to all counts and the case was tried before a jury. On June 19, 2014, the jury returned a verdict of guilty on all counts. (Docket #30).

As outlined in the Revised Presentence Investigation Report, "all of the charges related to Mr. Seifer's fraudulent submission of claims to [the United States Department of Labor, Office of Workers' Compensation

Programs ("OWCP")] for medically-related travel between March 26, 2006, and October 2, 2012." (Docket #36 at 6). Seifer "submitted more than 1,300 travel reimbursement claims to OWCP for travel to several different health clubs" and "[o]f the more than $100,000.00 Mr. Seifer obtained through travel reimbursement claims…he obtained $84,717.00 by submitting fraudulent travel claims." *Id.* at 7.

The Court notes that, in addition to the offenses listed above, Seifer—while testifying on his own behalf during trial—perjured himself "by repeatedly claiming he traveled to the health clubs for pool therapy on all of the dates he claimed," *id.* at 10; Seifer's testimony "obstructed the administration of justice" and was directly contrary to "records maintained by health clubs, [the] testimony of health club employees, and [GPS and visual] surveillance conducted by case agents." *Id.* at 10, 11.

Seifer's sentencing hearing was held on September 19, 2014. (See Docket #41). During the hearing, Seifer's attorney submitted documents to the Court concerning Seifer's medical treatment, current medications, and the results of a forensic psychiatric examination. *Id.* at 1–2. The Court found that Seifer's illegal activities "carried forward right into [the] courtroom" when he chose to perjure himself; thus, the Court increased Seifer's total offense level by two (from 15 to 17), pursuant to United States Sentencing Guideline § 3C1.1. *Id.* at 3. The Court's formal sentence included: (1) fifteen (15) months imprisonment (a term below the guideline range); (2) three years supervised release (with various conditions); and (3) $84,717.60 in restitution. (Docket #48). Because of Seifer's ailments—both physical and mental—the Court stated that its judgment would "include [a] recommendation that he be confined at a correctional facility with a medical facility - Butner, NC." (Docket #41 at 3); (*see also* Docket #48).

Seifer filed a timely Notice of Appeal on September 24, 2014. (Docket #44). Just under three weeks later, Seifer, through his trial attorney, filed a motion for leave to proceed on appeal *in forma pauperis.* (Docket #51). The Court granted Seifer's motion, after determining that "Seifer's appeal—while unlikely to succeed—has been taken in good faith given that the Court is unable to deem it wholly without merit." (Docket #52 at 1–2).

2.  MOTION TO STAY IMPOSITION OF SENTENCE PENDING APPEAL

As noted above, Seifer then filed the instant motion, requesting that the Court "permit[] him to remain free on bond pending the resolution of his appeal" or, in the alternative, push out (by thirty (30) days) his October 31, 2014 self-surrender date. (Docket #53). Seifer's arguments in support of his motion track the statutory requirements of 18 U.S.C. § 3143(b)(1). The statute states, in relevant part, that a defendant is entitled to release pending resolution of his or her appeal if the Court finds:

- (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released…and

- (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
    - (i) reversal,
    - (ii) an order for a new trial,
    - (iii) a sentence that does not include a term of imprisonment, or
    - (iv) a reduced sentence to a term of imprisonment less than the total of the time already served…

*See* 18 U.S.C. § 3143(b)(1).

At the outset, the Court finds it unnecessary to delve into the first requirement—that the defendant is not likely to flee or pose a danger to the safety of others or the community—at great length, considering that: (1) the

Court is not aware of any evidence indicating Seifer is likely to flee; (2) Seifer has been out on bond without issue during the pendency of this matter; (3) other than the instant offenses—all of which were non-violent—Seifer has no criminal history; and (4) the Court has no evidence before it that Seifer poses any risk to the community or any other person. Moreover, the government's letter in opposition concedes as much by raising no arguments to the contrary. Accordingly, the Court finds by clear and convincing evidence that Seifer is unlikely to flee or pose a danger to any other person or the community if released. *See* 18 U.S.C. § 3143(b)(1)(A).

Addressing the second requirement—that the appeal is not for the purpose of delay—Seifer states that "[b]y pursuing his appeal, [he] seeks only to exercise his right to appellate review and not to needlessly delay the legal process." (Docket #53 at 4). Elaborating further, Seifer states that his appeal is motivated by (and is rooted in) a feeling that "there are substantial questions regarding his cognitive abilities and this concern seriously hampered his ability to competently defend himself." *Id.* at 3. The government's letter opposing Seifer's motion does not address whether Seifer's appeal—or the instant motion—are dilatory tactics.

Turning to the third requirement—that the appeal raises a "substantial question of law or fact" that is likely to result in one of the enumerated outcomes—Seifer reiterates that his "defense at trial may have been seriously hampered by his 'significant cognitive problems.'" *Id.* at 4. (citing Docket #55 at 4 (Exhibit B)). Seifer concludes that if the Seventh Circuit Court of Appeals finds this characterization of his defense to be accurate, "the conviction could be set aside and this matter remanded for a new trial." *Id.*

The government argues that Seifer cannot make the mandatory showing necessary to satisfy the third requirement because the "Court already noted that Mr. Seifer's appeal is 'unlikely to succeed.'" (Docket #54 at 1) (quoting Docket #52 at 2).

The Bail Reform Act of 1984 "reverse[d] the prior presumption…that, provided one or more conditions of relief could reasonably assure that a defendant will not flee or pose a danger to the safety of any other person or the community, a convicted defendant would be entitled to bail unless 'it appears that an appeal is frivolous or taken for delay.'" *United States v. Bilanzich*, 771 F.2d 292, 298 (7th Cir. 1986) (quoting § 3(a), 80 Stat. 214, 215-216 (formerly codified as 18 U.S.C. § 3148)) (emphasis added). Section 3143 now requires "an affirmative finding that the chance for reversal is substantial. This gives recognition to the basic principle that a conviction is presumed to be correct." S.Rep. No. 225, 98th Cong., 1st Sess. 27, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3210.

Congress' decision to reverse "what it perceived as a 'presumption in favor of bail even after conviction'…demonstrates its recognition that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit." *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986). The defendant shoulders the burden of showing that his appeal has merit, *see Bilanzich*, 771 F.2d at 298, and this showing is necessary to ensure that post-conviction bail "is confined to those who are among the more promising candidates for ultimate exoneration." *Id.*

After determining that the defendant is not likely to flee or pose a danger to others or the community, the Seventh Circuit has instructed district courts to "first determine whether the appeal presents a substantial question

of law or fact." *Id.* A substantial question is one that presents "a 'close' question or one that very well could be decided the other way." *Shoffner*, 791 F.2d at 589; *see also United States v. Greenberg*, 772 F.2d 340, 341 (7th Cir. 1985) (stating that a "close" appeal is one that "could readily go either way, that it is a toss-up or nearly so"). In the end, the determination of whether a defendant has presented a "substantial question" is not "susceptible of mathematical precision," *Shoffner*, 791 F.2d at 590; instead, resolving the issue involves a case-by-case determination. *See United States v. Powell*, 761 F.2d 1227, 1232 (8th Cir. 1985). "Second, the district court must determine whether, assuming that the question is decided in the defendant's favor, the appellate court is more likely than not to reverse the conviction or order a new trial." *Bilanzich*, 771 F.2d at 298.

In summary, "'substantial' defines the level of merit required in the question presented and 'likely to result in reversal or an order for a new trial' defines the type of question that must be presented." *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985).

Here, Seifer's threadbare assertions fall woefully short of the showing required under § 3143(b) and the relevant case law. While Seifer argues that he was cognitively impaired during trial (and sentencing), the evidence in support of his allegation fails—on its face—to shore up this conclusory argument. Namely, this entire case was filed, tried, and resolved during 2014; Seifer's exhibit in support of his motion—a psychiatric report from a doctor— opines that "during the years between *March 26, 2006 and October 2, 2012*" Seifer had significant physical and mental health issues and was on "high doses of a number of medications including gabapentin, multiple narcotics, and multiple muscle relaxants," all of which make "it…universal that someone [in that state] will have significant cognitive problems."

(Docket #55 at 4 (Exhibit B)) (emphasis added). To be sure, the Court does not question the veracity or merit of the doctor's opinion; however, an opinion concerning Seifer's medical predicament from 2006 to 2012 is just shy of wholly irrelevant to Seifer's ability to competently defend himself at trial in 2014. Seifer's choice to testify on his own behalf, and do so without issue, also belies any finding that he was cognitively hampered during trial.

Perhaps because the letter was drafted and submitted in 2014, Seifer is requesting the Court to extrapolate that Seifer's cognitive problems carried forward to the present. The Court declines to do so. While Seifer's doctor does opine on Seifer's present medical state—specifically, that his "psychiatric and medical problems are severe and complex" requiring "intensive medial [sic] and psychiatric care"—the doctor states no opinion regarding Seifer's competency during 2013 or 2014. Seifer bears the burden of proving a substantial question of law or fact exists, a burden that cannot be met by asking the Court to make an inference lacking evidentiary support. Any holding to the contrary would subvert Congress' 1984 amendments to the Bail Reform Act which reversed the prior "presumption in favor of bail even after conviction." *Shoffner*, 791 F.2d at 589 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. at 26, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3209).

Second, and even assuming, *arguendo*, that Seifer had some cognitive impairment during 2014, his failure to apprise the Court of that fact until the morning of sentencing equally dooms his appeal. *See Bilanzich*, 771 F.2d at 299 ("harmless errors, errors that have no prejudicial effect, or *errors that have been insufficiently preserved* would not justify a court's granting bail") (emphasis added); *United States v. Giancola*, 754 F.2d 898, 901 n.4 (11th Cir. 1985) ("We do note…that to be a 'substantial question,' it must be one which

may properly be raised on appeal."). Seifer never raised the issue prior to, during, or right after trial. And, even when Seifer submitted the letter from the doctor to the Court at sentencing, Seifer did so only so that the Court had it on the record; he did not, at any time during his sentencing (or trial for that matter), raise the argument that he was not cognitively able to proceed.

Based on the foregoing analysis, the Court finds that Seifer's argument does not present a "substantial question of law or fact" that is likely to result in the Seventh Circuit reversing this Court or ordering a new trial. As the Court previously stated, Seifer's appeal is "unlikely to succeed" (Docket #52 at 2); this is so because: (1) the appeal lacks the "*level of merit* required"; and (2) as such, is unlikely to result in the outcome Seifer seeks—reversal or a new trial. *See Shoffner*, 791 F.2d at 589.

Finally, the Court would be remiss if it did not mention the second requirement, albeit briefly. While the government did address whether Seifer's appeal was for the purpose of delay, the Court will offer one observation. Namely, it would be hard to conclude that Seifer appealed for any reason other than delay, considering that his motion requests, in the alternative, to delay his self-surrender date for equally unmeritorious reasons. It seems, perchance, that Seifer's decision to appeal—and, therefore, the instant motion—is an attempt to delay the inevitability of having to serve a term of imprisonment for his crimes.

For all of the foregoing reasons, Seifer's motion for continued release pending appeal must be denied.

2.  REQUEST FOR AN EXTENSION OF SELF-SURRENDER DATE

Seifer's motion requests, in the alternative, that his self-surrender date be extended thirty (30) days to November 30, 2014. (Docket #53 at 4). He requests an extension because he is "concerned about the inability of FMC-

Lexington to treat his PTSD" and has "been advised that [FCI] FMC-Morgantown has recently commenced a PTSD program and, therefore, he would like to attempt a re-designation to FCI-Morgantown." *Id.* The government's letter in opposition opposes this extension; the government argues, in essence, that the Bureau of Prisons ("BOP") "is the proper entity to address Mr. Seifer's placement" given that his "medical history has presumably been provided to the BOP in advance of his designation." (Docket #54 at 2).

The Court agrees with the government. First, FMC Lexington is a federal medical facility with a Psychology Services Department that offers "a number of treatment and programming options for inmates." *See FMC Lexington Admission & Orientation Handbook* (May 2012), page 26-27, available at http://www.bop.gov/locations/institutions/lex/LEX_aohandbook.pdf. And second, the Court merely offers recommendations to the BOP regarding inmate placement; it is not, however, in the business of directing the BOP to make designations to specific institutions. Such choices are best left to the BOP, especially considering that Seifer's relevant medical information has been forwarded to the BOP—a resource the Court does not have before it.

Thus, the Court will deny Seifer's request, made in the alternative, for an extension of time to self-surrender. He is to surrender to the facility designated by the BOP on October 31, 2014, in accordance with the Court's amended judgment. (Docket #48).

Accordingly,

IT IS ORDERED that Defendant's motion for continued release pending appeal (Docket #53) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the Defendant's request, made in the alternative, for a thirty (30) day extension to voluntarily report to the institution designated by the Bureau of Prisons (Docket #53) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge